IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RODNEY L. PEGUES II, et al., | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No. 14-0041-CV-W-ODS |
| DURHAN D&M, LLC, | ) ) ) |
| Defendant. | ) |

## ORDER AND OPINION GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION OF PORTIONS OF PLAINTIFF RODNEY PEGUES'S CLAIMS

Pending is Defendant's Motion to Compel Arbitration, which seeks to require Plaintiff Rodney Pegues to arbitrate portions of his claims. The motion (Doc. # 23) is granted.

## I. BACKGROUND

Plaintiffs filed this suit in state court in December 2013. Defendant was served that same month and removed the case to federal court in early January 2014. As revealed in support of various requests to extend deadlines and stay proceedings, the parties agreed to mediate their disputes and as part of that effort exchanged information. The mediation took place on May 29, 2014, but proved unsuccessful. In late June, Defendant filed the instant Motion to Compel Arbitration.

According to the Petition filed in state court (hereafter "Complaint"), Defendant provides transportation for students in school districts located in Jackson County, Missouri. Complaint, ¶ 10. Plaintiffs are bus drivers employed by Defendant. Id. ¶ 14. Plaintiffs were allegedly required to arrive at least one hour before departing on their routes, but their time on the clock did not commence until their bus left the lot. Id. ¶ 17. In addition, they were required to work after returning from their route, but their time on the clock stopped upon their return to the lot. Id. ¶ 18. As a result, "Plaintiffs were required to work more than eight hours per day and forty hours per workweek [but] Defendant[ ] regularly failed and refused to fully compensate Plaintiffs for the overtime

hours that Plaintiffs worked." Id. ¶ 20. Plaintiffs assert four claims: violation of Missouri's Minimum Wage Law ("the MMWL") and claims for breach of contract, quantum meruit, and unjust enrichment.

During the time period covered by the suit, Pegues worked for Defendant at two different locations. From January 17, 2013 to an unspecified point in August 2013, Pegues worked at Defendant's "KCMO North" location. Thereafter, Pegues worked at Defendant's location in the Hickman Mills neighborhood in Kansas City. While working at the KCMO North location Pegues was a member of Teamsters Local 838, and the terms and conditions of his employment were governed by a collective bargaining agreement ("CBA") between Local 838 and Defendant. Article 12 addresses hours of work and some matters related to compensation. Articles 24 and 25 also address matters related to compensation. Article 11 establishes a grievance procedure. This procedure culminates with a requirement that a dissatisfied grievant may seek arbitration.

Article 14 is also relevant to the present discussion. Article 14 is entitled "NON-DISCRIMINATION," and Section 1 prohibits discrimination and retaliation based on union status, gender, creed, race, religion, race, marital status, and other factors. Section 2 starts with a promise that Defendant will abide by all federal and state laws prohibiting discrimination. The second paragraph of Section 2 states "[a]ny alleged violation of this section is subject to resolution through the grievance procedure. Such claims include:" and the following paragraph sets forth a list of claims, statutes and other causes of action. This list is not limited to claims that are related to discrimination or retaliation. As relevant to this suit, the list includes "any other claim under state, federal or local law including but not limited to . . . the Fair Labor Standards Act of 1935, 29 USC 201-219 [and] all state wage and/or law [sic] relating to employment issues . . ."

## II. DISCUSSION

### A.

The first issue is whether the CBA requires this dispute to be arbitrated. Put another way, the Court must "determine . . . 'whether there is a valid agreement to arbitrate and whether the specific dispute at issue falls within the substantive scope of that agreement.'" Bailey v. Ameriquest Mortg. Co., 346 F.3d 821, 822 (8th Cir. 2003) (quoting Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085 (8th Cir. 2001)). Pegues does not dispute that there is a valid agreement to arbitrate, but contends his claims are not within the scope of that agreement. The Court disagrees.

Pegues' sole argument is that Count I – the MMWL claim – is not covered by the CBA. This is not true. Article 14, Section 2 directs that violations of "all state wage and/or law relating to employment issues" are subject to resolution through the grievance procedure (which includes the arbitration provision). Plaintiff argues that Article 14 applies only to discrimination and retaliation claims because of its title. However, it is the CBA's terms – not the Article and Section titles – that controls. Moreover, several of the listed claims that must be arbitrated have nothing to do with discrimination or retaliation. For instance, claims under the Fair Labor Standards Act – including claims for nonpayment of minimum and overtime wages – must be arbitrated. Thus, it is simply not true that the only things covered by Article 14, Section 2 are claims of discrimination and retaliation. Pegues' MMWL claim is a claim arising under a state wage law and thus must be arbitrated.

Even if the Court held otherwise, Pegues' claims under Counts II - IV must be arbitrated. These counts allege contract and quasi-contract claims. His claims that he was not paid the amounts due under the contract is a grievance within the meaning of Article 11 because it is a "dispute . . . regarding the interpretation, application or breech of the provisions of" the CBA.

B.

Pegues next argues that Defendant has waived the benefits of the CBA's arbitration provisions. A party waives its right to insist upon arbitration if the party seeking arbitration (1) knew of its right to insist on arbitration, (2) acted inconsistently with that right, and (3) those inconsistent acts prejudiced the other party. E.g., Erdman Co. v. Phoenix Land & Acquisition, LLC, 650 F.3d 1115, 1117 (8th Cir. 2011). A party acts inconsistently with its right to arbitrate if it "substantially invokes the litigation machinery," which it does "when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." Lewallen v. Green Tree Servicing, LLC, 487 F.3d 1085, 1090 (8th Cir. 2007) (quotations omitted). There appears little dispute that Defendant knew of its right to insist on arbitration, and the Court will assume this fact for purposes of discussion.

Pegues contends Defendant acted inconsistently with its right to arbitrate by:
1. Removing the case to federal court
2. Filing an Answer
3. Engaging in discovery
4. Waiting nearly seven months to file its Motion to Compel Arbitration
5. Participating in mediation

He contends he has been prejudiced "in the form of lost time, unnecessary expense, duplicative efforts, and potentially creating an unfair discovery disadvantage in arbitration." Pegues's Suggestions in Opposition (Doc. # 27) at 6. The Court does not agree that the second and third components described in Erdman Co. have been satisfied.

Removing the case from state court to federal court is not the same as filing the lawsuit in the first instance. Filing a lawsuit is an effort to obtain a judicial resolution. Removing the case from state to federal court is not necessarily an effort to obtain a judicial resolution: Defendant had been sued, so it was in the position of having to ask *some* court to enforce the arbitration provision. Removing the case to federal court does not mean it was surrendering its rights under the CBA. Defendant filed an

4

Answer, but the Answer's Sixth Defense specifically invokes Defendant's right to enforce the arbitration provision. Moreover, an Answer was required because (1) there are two other plaintiffs who are not bound by the CBA and (2) Pegues's claims after August 2013 are not governed by the CBA. Even if filing an Answer was somehow meaningful in an ordinary case, under these circumstances it is not meaningful because Defendant had to file an Answer to avoid defaulting on these other claims.

The presence of other plaintiffs and other claims that could not be arbitrated also justifies Defendant's use of the discovery process. Moreover, according to the Docket Sheet, Defendant issued its first set of document requests and interrogatories two days before it filed its Motion to Compel Arbitration – so it is not as if Defendant engaged in significant amounts of discovery and then sought to compel arbitration.

Finally, the Court is not inclined to hold that a party invokes "the machinery of litigation" by trying to resolve a dispute through mediation – primarily because mediation is not a part of the machinery of litigation, but also because of the presence of non-arbitrable claims. The effort to mediate also provides some perspective for the supposed seven-month delay in filing the Motion to Compel. Before the parties agreed to attempt mediation, Plaintiff had filed a Motion to Remand. Thereafter, the parties asked to delay briefing on the Motion to Remand until after they met with the mediator on May 29, 2014. The Court concludes Defendant's decision to wait until after the mediation before filing its Motion to Compel was reasonable under the circumstances and evinces a desire to avoid the machinery of litigation and not a desire to waive its right to insist upon arbitration. The Court also notes Defendant's motion was filed less than thirty days after the mediation.

As there have been no actions inconsistent with Defendant's right to arbitrate, there is no prejudice to consider. Even if there were inconsistent acts, Pegues has not demonstrated any prejudice. He has not identified any lost time, unnecessary expense, or duplicative efforts that are attributable to anything Defendant has done (except, perhaps, the time lost spent mediating the dispute – but the Court is not willing to attribute that "lost time" solely to one side). The specter of a "potentially unfair discovery disadvantage in arbitration" is too non-specific to be considered and appears non-existent under the circumstances described above.

## III.  CONCLUSION

Pegues's claims for the time period from January 17, 2013 until he stopped working at Defendant's KCMO North location must be arbitrated.

IT IS SO ORDERED.

                                                     /s/ Ortrie D. Smith
                                                   ORTRIE D. SMITH, SENIOR JUDGE
DATE: August 13, 2014                       UNITED STATES DISTRICT COURT